## SHAW & a. v SHAW.

When, in an action for slander, the plaintiff proved the speaking by defendant
of other defamatory words, for the purpose of showing malice, the defend-
ant will not be allowed to ask the witness how he "understood" those words.
Such enquiry, will be allowed in reference to the words charged in the declara-
tion, only when they are ambiguous, and always with great caution.

THIS was an action on the case brought by John M. Shaw and
wife against Marshall B. Shaw, for slander of the wife.

For the purpose of showing malice, the plaintiffs proved the
speaking of other defamatory words, whereupon, the defendant pro-
posed to ask the witness, if he understood the words spoken to
impute the want of chastity to the wife, and this the court excluded.

The verdict was for the plaintiffs.

*Cushing*, for defendant.

I. The evidence on which the question arose, was offered, not for
the purpose of proving the speaking of the words, alleged in the
declaration to have been spoken, but for the purpose of aggravating
the damages by proving the speaking of other words of similar im-
port. The cases in New Hampshire, in which this doctrine is dis-
cussed, only decide that the speaking of words of similar import to
those alleged in the declaration, may be so given in evidence. The
*dicta* of Mr. Justice Fowler, extending the rule to other words, ap-
pear to us to go beyond the points in those cases, and to be unsup-
ported by their authority. *Severance* v. *Hilton*, 32 N. H. 289 ; *Sy-
monds* v. *Carter*, 32 N. H. 458.

II. The words which appear in the case, are, at most, ambiguous.
They are not necessarily of similar import to the words which make
the subject matter of the action, and in fact, are used in such a
connection as to negative that meaning. We uderstand the rule
to be, that it is material and admissible to enquire how the words
were understood. *Smart* v. *Blanchard*, 42 N. H. 137.

III. It may be added, that if, according to the *dicta* of some of
the cases, the testimony was admissible as tending to make it more
*probable* than it otherwise would be, that the defendant spoke the
words, and in the sense, alleged in the writ, then, the sense in which
the other words, testified to and put in evidence, were used, would
be very material.

*Wheeler & Faulkner*, for plaintiffs.

1. The issue in this case was, whether the defendant had uttered
the words set out in the declaration in the sense charged. Any evi-
dence tending to show, that he did not utter them, or, uttering, did
not use them in the sense charged was material to the issue ; evi-

dence having no such tendency was clearly immaterial, irrelevant and inadmissible. The plaintiffs having introduced evidence to prove the speaking of the words, and a witness called by the defendant,—who was not present at the time the alleged slander was uttered,—having testified to other words used by the defendant at other times, the proposition was to show how the witness understood those other words.

2. The question cannot now properly be raised, whether the testimony which was admitted was admissible ; because it was admitted *without objection*; but the true question is, whether the witness could be permitted to give his opinion as to the meaning of the language which he repeated upon the stand. It is well settled, that, where the words are unambiguous, and their application not doubtful, the opinion of witnesses as to their meaning is inadmissible. *Van Vechten* v. *Hopkins*, 5 Johns. 211 ; *Snell* v. *Snow*, 13 Met. 282 ; *Butterfield* v. *Buffum*, 9 N. H. 156 ; *Smart* v. *Blanchard*, 42 N. H. 137.

3. Words spoken at one time can have no tendency to prove that other words were not spoken at another time, or to explain the meaning of words proved to have been spoken at another time. Because a man has on one occasion used slanderous language concerning his neighbor, there is no presumption, that he has used such language at any other time. Nor, if it were capable of proof that on no other occasion had he used such language, would it be a legitimate inference that the words charged were not spoken at the time alleged. The understanding, therefore, of a witness as to the meaning of language used at other times, or on different occasions, or in conversation addressed to different persons, can have no legitimate tendency to rebut evidence, that, on the occasion in question, the words alleged were used in the sense charged.

BELLOWS, C. J. The testimony reported in the case, appears to have been received without objection, and the only question is, whether the defendant ought to have been allowed to ask the witness if he " understood" the defendant to make any imputation upon the female plaintiffs character for chastity.

If the witness had been called to prove the speaking of the words laid in the declaration, and he had proved words which were ambiguous, the plaintiff might show that they were used in their actionable sense, and that they were so understood by the witness. The reason assigned for thus admitting the proof, of how they were understood by the hearers, is, that unless they were understood in an actionable sense, the plaintiff could not have been injured, as if the word, had been spoken in a foreign language, which the hearers did not understand. See *Smart* v. *Blanchard*, 42 N. H. 148 and cases cited. It will be borne in mind, however, that this testimony as to how the hearers understood the words, can have no legal tendency to show in what sense they were actually used. *Smart* v. *Blanchard*, 42 N. H. 149, before cited.

From this it follows, logically, that in respect to words proved merely to show the existence of malice, they not being laid in the declaration, the sense in which they were understood by the hearers, is totally immaterial, and, therefore, such proof is properly rejected. The purpose of proving the speaking of such words, is to show malice in the defendant, and the sense in which he used them is the material enquiry. If he used them maliciously, the jury may consider it in determining with what degree of malice the words laid in the declaration were spoken,—although damages can be awarded only for the latter words.

It is obvious, then, from these principles, that the understanding of the hearers, as to words not laid in the declaration, can throw no light upon the motive of the speaker, or the meaning of the words he used.

Again, we think, there is no such ambiguity in the words used, as to justify the court, in the exercise of a sound discretion, in admitting proof of the understanding of the hearers as to their meaning.

Such testimony, should in all cases be cautiously received, because it has a tendency to mislead a jury; and it should not be admitted at all, when the meaning of the words is reasonably plain, as we think they are in this case.

There must, therefore, be

*Judgment on the verdict.*